IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LEXINGTON LUMINANCE LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 1:12-cv-12216-DJC |
| | § | |
| AMAZON.COM, INC. and | § | JURY DEMANDED |
| AMAZON DIGITAL SERVICES, INC., | § | |
| | § | |
| Defendants. | § | |

**LEXINGTON LUMINANCE LLC'S RESPONSE TO
AMAZON'S MOTION FOR JUDGEMENT ON THE PLEADINGS**

Plaintiff Lexington Luminance LLC ("Lexington" or "Plaintiff") responds to Defendants Amazon.com, Inc.'s and Amazon Digital Services, Inc.'s (collectively "Amazon" or "Defendants") Motion for Judgment on the Pleadings (Dkt. 49) and would respectfully show the Court as follows.

**I.      LEGAL STANDARDS**

In a patent case, a district court applies the rule of the regional circuit in deciding a motion to dismiss on the pleadings under Rule 12(c). See *Merck & Co. v. Hi-Tech. Pharmacal Co.*, 482 F.3d 1317, 1320 (Fed. Cir. 2007). A motion for judgment on the pleadings is treated like a Rule 12(b)(6) motion to dismiss. *Pérez–Acevedo v. Rivero–Cubano*, 520 F.3d 26, 29 (1st Cir. 2008); *Elena v. Municipality of San Juan*, 677 F.3d 1, 5 (1st Cir. 2012). Thus, this Court should only grant Defendants' motion if, taking all the complaint's well-pled allegations as true and viewing the other facts in the light most favorable to Lexington, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To resolve an allegation of indefiniteness, a district court must determine whether "one skilled in the art would understand the bounds of the claim when read in light of the specification. If the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more." *Personalized Media Communications LLC v. International Trade Comm'n*. 161 F.3d 696, 705 (Fed. Cir. 1998) (quoting *Miles Lab., Inc. v. Shandon. Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993)) (alteration in original). If, however, the court determines that a challenged claim is not "'amenable to construction,' then the claim is invalid as indefinite under 35 U.S.C. § 112, ¶2." *Honeywell Int'l. Inc. v. International Trade Comm'n*. 341 F.3d 1332, 1338 (Fed. Cir. 2003).

Because patented claims are presumed valid, to prove indefiniteness "[a]n accused infringer must... demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art." *Haemonetics Com, v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010): see *Honeywell Int'l.*, 341 F.3d at 1338-39 (quoting *Exxon Research & Ene'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)) ("Because a claim is presumed valid, a claim is indefinite only if the 'claim is insolubly ambiguous, and no narrowing construction can properly be adopted.'").

## II.   ANALYSIS

This Court must determine whether Defendants have shown, by clear and convincing evidence, that Claim 1 is insolubly ambiguous. See *Halliburton Energy Services. Inc. v. M-I LLC*, 514 F.3d 1244,1249 (Fed. Cir. 2008) ("[C]laims are not indefinite merely because they present a difficult task of claim construction" nor are they indefinite when reasonable persons would disagree as to the proper construction; rather, a claim is only indefinite if "an accused

2

infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim ").

For easy reference, claim 1 reads as follows with the terms Defendants accuse of indefiniteness underlined:

1. A semiconductor light-emitting device comprising:
   a substrate;
   a textured district defined on the surface of said substrate comprising a plurality of etched trenches having a sloped etching profile with a smooth rotation of microfacets without a prescribed angle of inclination;
   a first layer disposed on said textured district; comprising a plurality of inclined lower portions so as to guide <u>the extended lattice defects</u> away from propagating into the active layer, said first layer and said substrate form a lattice-mismatched misfit system, <u>said substrate is selected from the group comprising</u> group III-V, group IV, group II-VI elements and alloys, ZnO, spinel and sapphire; and
   a light-emitting structure containing an active layer disposed on said first layer.

A.   **JUDGMENT ON THE PLEADINGS IS NOT APPROPRIATE HERE**

Indefiniteness is judged not according to the subjective impressions of any one person, but objectively based on how a person skilled in the art would understand the term. *Source Search Tech. LLC v. Lending Tree, LLC*, 588 F.3d 1063 (Fed. Cir. 2009) ("[T]his court measures indefiniteness according to an objective measure that recognizes artisans of ordinary skill are not mindless 'automatons.'").

Patent Case Management Judicial Guide (2012) ¶5.2.4.2.

This Motion is not about how lawyers understand the claims terms. It's about how a person skilled in the art would understand the terms. Defendants ask this Court to determine the issue of indefiniteness without setting forth any evidence regarding how a person skilled in the art would understand the terms. Drawing all reasonable inferences in Lexington's favor, given its lack of evidence, Defendants cannot even come close to meeting its clear and convincing evidentiary burden.

Should Defendants submit matters outside of the pleadings, or if the Court should otherwise treat Defendants' motion as a motion for summary judgment, then Lexington requests that it be afforded the opportunity to submit evidence outside of the pleadings. Under the present circumstances upon which Defendants seek judgment on the pleadings, its indefiniteness allegations are not amenable to judgment on the pleadings.

### B. THE CLAIM TERMS MAY BE GIVEN REASONABLE MEANINGS

"Claims are considered indefinite when they are not amenable to construction or are insolubly ambiguous. Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning. Indefiniteness requires a determination whether those skilled in the art would understand what is claimed." *Young v. Lumenis, Inc.,* 492 F.3d 1336, 1346 (Fed.Cir.2007). A patent is presumed to be valid, so Defendants face an evidentiary burden of clear and convincing evidence to show facts supporting a conclusion of invalidity. See *id.* at 1345.

#### 1. "THE EXTENDED LATTICE DEFECTS"

##### A) BACKGROUND

U.S. Patent No. 6,936,851 ("the '851 patent") is directed to the reduction of certain defects in light-emitting diode ("LED") semiconductors. The fabrication of an LED usually begins with the application of a semiconductor layer on a substrate. Sometimes, a crystalline layer is applied on top of a crystalline substrate. At the atomic level, crystalline materials are made up of a crystal lattice, in which the atoms are arranged in a particular pattern, or lattice structure. A key parameter of a crystal lattice is the distance between the unit cells, known as the "lattice constant." When a crystalline layer is applied on top of a crystalline substrate having a different lattice constant, a "misfit system" or "lattice-mismatched system" results. The lattice mismatch in a lattice-mismatched system leads to "lattice defects" propagating into

4

the layer. The '851 patent discloses a method of reducing the propagation of the lattice defects into the light-emitting layers of the LED by the application of a texture to the surface of the substrate. See '851 patent, col. 1, ll. 8-15.

The specification makes clear that such defects always exist in such misfit systems. Col. 2, ll. 3-10 ("Thus structural defects <u>are inevitably generated</u> as the growth front attempts to negotiate surface defects with sharp corners and abrupt changing curvature. The grown-in defects will multiply and propagate into the active region during operation causing premature degradation of the device.") (emphasis added).

### B) THE SPECIFICATION PROVIDES ADEQUATE GUIDANCE ON HOW THE TERM SHOULD BE CONSTRUED

An "extended defect" or "extended lattice defect" is a lattice defect that extends in some direction, that is, it exists as something other than a point defect. For example, a line defect is a one-dimensional defect that has an extent. The relevant object of the '851 patent is abundantly clear from the specification – it is to reduce the propagation of extended defects into the active region. See '851 patent, abstract ("The initial inclined layer deposition serves to guide the extended defects to designated gettering centers in the trench region where the defects combine with each other. As a result, the defect density in the upper section of the structure is much reduced."); see also '851 patent col. 1, ll. 12-15 ("As a result, the free propagation of extended defects through the active region is restricted and the overall defect density of the system is reduced."); see also '851 patent col. 1, ll. 43-46 ("As the inclined growth proceeds, the extended defects such as misfit dislocation are guided to designated locations and the overall defect density in the misfit system is reduced."); see also '851 patent col. 5, ll. 7-10 ("By incorporating the present textured surface district, the inclined layer growth is further optimized such that the

extended defects are deliberately routed to designated gettering centers in the trench region. As a result, the overall defect density in the misfit system is much reduced.")

In its attempt to ignore the fact that Judge Young did not hesitate to construe the terms in co-pending litigation, Defendants posit that the "guiding" function in the claim element is separate from any "reduction" in defect incidence. Mot. n. 4 at 8. This is not so. As described above, the "guiding" of lattice defects provides a "reduction" in the free propagation of defects into the active layer. See '851 patent, abstract ("… serves to guide the extended defects… . As a result, the defect density in the upper section of the structure is much reduced.")

Defendants ask the Court to follow *Amgen, Inc. v. Chugai Pharm. Co.* Mot. at 4 citing *Amgen*, 927 F.2d 1200, 1217-18 (Fed. Cir. 1991). However, the Federal Circuit found *Amgen* distinguishable in a case involving facts very similar to those of the instant case.

> Unlike the situation in *Amgen*, here the intrinsic evidence does provide guidance on the meaning of the term "near." When intrinsic evidence resolves the claim construction, a term is not "insolubly ambiguous," and thus reference to the prior art is not needed. That is the situation here. In addition, there were no office actions issued by the PTO during the original prosecution rejecting the claims over the prior art. There were also no amendments or arguments filed by the patentee. Thus, unlike in *Amgen*, the claims were not amended to include vague language in order to overcome close prior art.

*Young v. Lumenis, Inc.,* 492 F.3d 1336, 1347 (Fed.Cir.2007).

As in *Young*, the specification of the '851 patent provides guidance on the meaning of the term "the extended lattice defects." Also, the claims of the '851 patent were not amended for any reason relating to the term, or to include vague language in order to overcome close prior art.

### C)   TERMS OF DEGREE ARE NOT INSOLUBLY AMBIGUOUS

Defendants argue that the limitation is a <u>term of degree</u>:

6

In drafting claim 1, the patentee has used the term "the" as a "word of degree," without providing any guidance on the quantity of "extended lattice defects" that must be guided away from the active layer.

Mot. at 7.

Specifically, Defendants state:

Did [the patentee] mean that his invention would guide **all** extended lattice defects away from the active layer? Or, by using the plural "defects," that the invention would simply guide **more than one** extended lattice defect? Or was it that the invention would guide **some other, indeterminate number** of lattice defects away from the active layer?

Mot. at 6.

Further, Defendants posit that a lack of precision in a term makes a claim invalid:

Where a patentee has failed to claim his invention with sufficient precision that one of ordinary skill in the art would understand the claim to have only one reasonable interpretation, the claim is indefinite and must be declared invalid.

Mot. at 4, citing *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005).[1]

This is not so.  And recently, another court specifically agreed with Lexington on this point. *Apple, Inc. v. Samsung Elecs. Co.,* No.: 11-CV-01846-LHK at *5 (Jan 29, 2013, N.D. Cal.) ("The Federal Circuit has never suggested that a lack of precision constitutes a lack of construability, so as to render a term of degree indefinite.  Indeed, the Federal Circuit has construed such terms of degree.") (emphasis added).

In addition, Defendants' reliance on *IPXL* is questionable.  The Federal Circuit has held that ""[t]he test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." *Star Scientific, Inc. v. R.J.*

---

[1] Defendants' reliance on *IPXL* is misplaced.  *IPXL* involved a claim allegedly covering both an apparatus and a method of use, an issue vastly different from the issues raised by Defendants.

7

*Reynolds Tobacco Co.*, 537 F.3d 1357, 1373 (Fed. Cir. 2008) (quoting *Invitrogen Corp. v. Biocrest Mfg , L.P.* , 424 F.3d 1374, 1384 (Fed. Cir. 2005) (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005).

Following the Federal Circuit's practice of construing such terms of degree, this Court should refuse to find the term indefinite.  If the Court chooses to construe the term "the", Lexington suggests that it may be construed as "a significant number" or "a substantial number".  However, Lexington does not believe that the term requires construction. Accord *Apple, Inc.,* No.: 11-CV-01846-LHK at *8 (refusing to find indefiniteness or to construe a term containing the word "substantially", while finding that "the Federal Circuit's cases establish that precise construction is not required, or even permissible, when a patent uses a term of degree such as "substantially," and the specification does not provide a standard for measuring the precise boundaries of that term of degree.")  In addition, the term should not be construed because Defendants failed to propose a construction. *Accenture Global Services GMBH, et al. v. Guidewire Software Inc.*, No. 07-826-SLR, Dkt. 483 at *41 (D. Del., Mar. 5, 2010) (Robinson, J.) ("Defendant did not present this argument in connection with claim construction.  The court, therefore, is not in a position to assign a particular meaning to 'the characteristics,' only to determine whether its meaning is reasonably ascertainable.  The court answers this question in the affirmative.") (citing *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) ("Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite.")

### 2. "SAID SUBSTRATE IS SELECTED FROM THE GROUP COMPRISING"

The terms "from the group" and "comprising" are not inconsistent, and the claim limitations may be construed appropriately.  See *Accenture* at *41 (rejecting Defendant's claim

that the claim language "a plurality of levels from the group comprising a policy level, a claim level, a participant level, and a line level" is a *Markush* group or that it is indefinite; rejecting Defendant's argument that "from the group" and "comprising" are inconsistent; proceeding to construe the claim limitations).

The parties have agreed to constructions related to the following claim terms:

| Term | Agreed Construction |
|---|---|
| substrate | the supporting material upon which the other layers of an light-emitting device are grown |
| group III-V . . . elements and alloys | an alloy of at least one group III element (i.e., boron, aluminum, gallium, indium, thallium, scandium, yttrium) and at least one group V element (i.e., nitrogen, phosphorous, arsenic, antimony, bismuth, vanadium, niobium, tantalum, dubnium) |
| group IV . . . elements and alloys | a group IV element alone (i.e., carbon, silicon, germanium, tin, lead, titanium, zirconium, hafnium, rutherfordium), or an alloy of two or more group IV elements |
| group II-VI . . . elements and alloys | an alloy of at least one group II element (i.e., beryllium, magnesium, calcium, strontium, barium, radium, zinc, cadmium, mercury, copernicium) and at least one group VI element (i.e., oxygen, sulfur, selenium, tellurium, polonium, livermorium, chromium, molybdenum, tungsten, seaborgium) |

The claim language reads: "<u>said substrate is selected from the group comprising</u> group III-V, group IV, group II-VI elements and alloys, ZnO, spinel and sapphire".[2] The reasonably ascertainable meaning is that the substrate must include one of the following:

> a group III-V alloy,
> a group IV element or a group IV alloy,
> a group II-VI alloy,
> ZnO,
> spinel, or
> sapphire.

The term "comprising" means that the substrate must contain one of the above list items but may also contain other elements. *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed.

---

[2] Emphasis added. Also, the groups preceding the Roman numerals refer to groups in the Periodic Table of the Elements.

Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.").

Moreover, the materials in the list above are consistent with the exemplary substrate materials disclosed in the specification. For example, as to the exemplary substrates cited in the specification, GaAs, InP, GaN are group III-V alloys, while Si, SiC, and SiC-on-Si are group IV elements or alloys. See '851 patent col. 3, ll. 52-54.

Defendants assert "[a]s written, and as apparently intended by the patentee, this term requires selection from a group whose boundaries are never stated." Mot. at 16. It strains credibility to suggest that a person having ordinary skill in the art would ever arrive at Defendants' conclusion. To interpret the limitation to mean that the substrate could be selected from one or more materials that were not a member of the above list would be to abrogate the claim limitation. A person having ordinary skill in the art would not do this, and neither would the Federal Circuit, for the simple reason that "comprising" is not a "weasel word with which to abrogate claim limitations." See *The Gillette Co. v. Energizer Holdings, Inc.*, No. 03-11514-PBS (D.Mass. Jan. 15, 2004) (Saris, J.) citing *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379-80 (Fed. Cir. 1998).

### III.     CONCLUSION

For the foregoing reasons, Lexington respectfully requests that the Court deny Defendants' Motion.

DATED: August 28, 2013			Respectfully submitted,

**LEXINGTON LUMINANCE LLC**,
By its attorneys,

/s/ *Robert D. Katz*
David S. Godkin  (BBO#196530)
Andrew A. Caffrey III (BBO#660481)
BIRNBAUM & GODKIN LLP
280 Summer Street
Boston, MA 02210
617-307-6100
godkin@birnbaumgodkin.com

Robert D. Katz
KATZ PLLC
6060 N. Central Expressway, Suite 570
Dallas, TX 75206
214-865-8000
rkatz@katzlawpllc.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the above date.

/s/ *Robert D. Katz*
Robert D. Katz